# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **PATRICIA WHEELES,** )<br><br>    **Plaintiff,** )<br><br>**v.** )<br><br>**NELSON'S ELECTRIC MOTOR** )<br>**SERVICES, GARY NELSON,** )<br>individually and in his official )<br>capacity, **LOUISE PARTIKA,** )<br>individually and in her official )<br>capacity, and **RENEA MORGAN,** )<br>individually and in her official )<br>capacity, )<br><br>    **Defendants.** ) | **CASE NO. 3:07 CV1006-TFM** |

## DEFENDANTS' REPLY BRIEF TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Come now the Defendants, Nelson's Electric Motor Services, Gary Nelson, Louise Partika and Renea Morgan in the above styled cause and in reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, state as follows:

## ARGUMENT

The Plaintiff does very little to respond to Defendants' Motion for Summary Judgment other than to recite language in her Complaint (which is not sufficient) and self-serving statements drawn from her deposition testimony from her attorney.

### Plaintiff's Burden

After the moving party has met its burden under Rule 56(e), the non-moving party must go beyond the pleadings and designate specific facts from affidavits, answers to

1

interrogatories and/or depositions showing there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 312 @ 322, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Circ. 1993).

As much as Plaintiff wishes to believe that she was terminated wrongfully, she was actually terminated for legitimate non-discriminatory reasons. (i.e. decline in business in Alexander City and refusal of a key employee manager of the Opelika shop to agree to work again with Plaintiff). (See Affidavit of Gary Nelson – paragraph 4 and Affidavit of Ricky Lashley – paragraphs 2 & 3).

Plaintiff's response brief is totally without any admissible evidence other than Plaintiff's opinion as to the issue of any discriminatory acts which resulted in her termination. In fact, she admits in her deposition testimony that much of her knowledge of who was hired and their job responsibilities, are based upon inadmissible hearsay. (See deposition of Plaintiff, page 21, lines 4-23, page 22, lines 1-19, page 58, line 21, and page 59, lines 1-10.)

In reply to specific arguments made by the Plaintiff, Defendants state as follows:

I.      **Plaintiff's claims against the employees of Nelson's Electric should be dismissed.**

Simply stated, only the employer may be sued for violations of Title VII of the ADEA, not individuals, even if they are co-employees or supervisors. (See *Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Circ. 1991), *Smith v. Auburn University*, 201 F. Supp. 2nd 1216 (M.D. 2002).

II.     **Plaintiff's stated facts fall short of supporting a viable claim for discrimination either of age, sex or hostile workplace.**

Plaintiff appears to allege that she was placed in a hostile work environment because of her sex and religious beliefs. The only sexual connotation of sex in the workplace is

Plaintiff's statements that Nelson and Morgan had some type of sexual relationship.  At no time does Plaintiff allege that the sexual conduct was directed toward her nor that any part of her job or ability to do her job was affected by this conduct between Nelson and Morgan.

As to religious "persecution", Plaintiff's evidence is her statements about the "angel earrings" and "Jesus" comments and the fact that some of the men in the shop area cursed. Plaintiff states that on the date of her termination, Nelson grabbed her by the arm when she picked up two disks but admits that certainly wasn't a sexual advance or sexual act on Nelson's part.  (See deposition of Plaintiff, page 62, lines 21-23 and page 63, line 1).

Taken in total, this conduct does not meet the *Mendoza* litmus test.  In *Mendoza*, the Court had before it lewd conduct directed toward the Plaintiff such as stating, "I'm getting fired up", touching the Plaintiff on the hip, making sniffing sounds while looking at Plaintiff's groin area and repeatedly following and staring at the Plaintiff.  *Mendoza*, et seq. 1247.

The *Mendoza* Court stated that this conduct did not amount to conduct so severe or pervasive as to alter the terms or conditions of Plaintiff's employment.  Certainly the "offensive conduct" as described by Plaintiff Wheeles is much less offensive, severe or pervasive as the conduct described in *Mendoza*.

**III.     Plaintiff has failed to allege sufficient facts to establish a violation of her rights under the ADEA.**

Plaintiff's entire Complaint seems to be based around the employment of Renea Morgan. Morgan was employed to perform totally different job responsibilities than those of the Plaintiff. Morgan was employed as an inventory control clerk and Plaintiff was employed to perform Payroll, Accounts Payable, and General Ledger duties.  At no time even to date has Renea Morgan taken over the responsibilities previously performed by Plaintiff. (See Affidavit of

Renea Morgan – paragraph 2) other than a small task involving payroll which takes 30 minutes to a hour on one day per week. Plaintiff was not terminated due to her age. She was terminated for legitimate business reasons which are non-discriminatory. Plaintiff may well have continued her employment with Nelson's Electric if the key man at the Opelika shop had not threatened to quit if Plaintiff was assigned to Opelika. (See Affidavit of Ricky Lashley – paragraph 3 and Affidavit of Gary Nelson – paragraph 4).

Plaintiff puts much emphasis on the hiring of Debra Keel as evidence that Plaintiff was terminated due to her age. Debra Keel, age 52, was employed to handle accounts at both the Alexander City and Opelika locations. Ms. Keel was hired more than seven (7) months after Plaintiff was terminated and quit soon thereafter. No one has replaced Debra Keel at the Alexander City office of Nelson's Electric. Nelson's Electric continues to employ only two (2) females, Louise Partika and Renea Morgan. (See Affidavit of Gary Nelson – paragraph 8).

Assuming for argument the Plaintiff had established the requisites for a prima facie case, Defendants have met their burden of producing legitimate and non-discriminatory reasons for the action challenged by Plaintiff. This burden is not one of persuasion but of production and the employer "need only produce evidence that could allow a rational fact finder to conclude that the discharge of Plaintiff was not made for a discriminatory reason." *Schweers v. Montgomery Public Schools*, 511 F. Supp.2d 1128 (M.D. Ala. 2007) citing *Standard v. A.B.E.I. Servs., Inc.*, 161 F.3d 1318, 1331 (11th Circ. 1998). While the Courts have stated that this burden is "exceedingly light" [See *Holified v. Reno*, 115 F.3d at 1564, (11th Cir. 1997)], Nelson's Electric has met this burden with substantial evidence of economic driven causes for the termination of Plaintiff, which was non-discriminatory.

## **CONCLUSION**

Plaintiff's evidence, when looked at in gross and in favor of Plaintiff, does not amount to that type of conduct as would support a sexual harassment or hostile workplace, or religious discrimination action.  Plaintiff was terminated because of the lack of business in Alexander City and the fact that the manager in the Opelika location refused to work with Plaintiff again.  These are legitimate and non-discriminatory reasons acted upon by the Defendant, Nelson's Electric and Plaintiff has not met her burden to show to this Court any substantive material issue which requires the consideration of the trier of fact.

Respectfully submitted this the 29th day of April, 2008.

/s/  *William Larkin Radney, III*
**WILLIAM LARKIN RADNEY, III (RAD001)**
**Attorney for named Defendants**

**OF COUNSEL:**
BARNES & RADNEY, P.C.
80 North Central Avenue
Post Office Drawer 877
Alexander City, Alabama 35011-0877
Telephone:    (256) 329-8438
Facsimile:    (256) 329-0809
Email      :    lradney@bellsouth.net

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **PATRICIA WHEELES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CASE NO. 3:07 CV1006-TFM** |
| | ) |
| **NELSON'S ELECTRIC MOTOR** | ) |
| **SERVICES, GARY NELSON,** | ) |
| **individually and in his official** | ) |
| **capacity, LOUISE PARTIKA,** | ) |
| **individually and in her official** | ) |
| **capacity, and RENEA MORGAN,** | ) |
| **individually and in her official** | ) |
| **capacity,** | ) |
| | ) |
| **Defendants.** | ) |

### CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2008, I electronically filed the foregoing Defendants' Motion for Summary Judgment and Brief in Support of Motion for Summary Judgment with the Clerk of this Court using the CM/ECF system which will send notification of such filing to the following:

Derrick Blythe
Attorney at Law
126 Marshall Street
Alexander City, Alabama 35010

Respectfully Submitted,

/s/ *William Larkin Radney, III*
**WILLIAM LARKIN RADNEY, III**
Attorney for Defendants
Barnes & Radney, P.C., Law Firm
80 North Central Avenue
Post Office Drawer 877
Alexander City, Alabama 35011-0877
Telephone:    (256) 329-8438
Facsimile:    (256) 329-0809
Email    :    lradney@bellsouth.net

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| **PATRICIA WHEELES,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )    **CASE NO. 3:07 CV1006-MEF** |
| | ) |
| **NELSON'S ELECTRIC MOTOR** | ) |
| **SERVICES, GARY NELSON,** | ) |
| **individually and in his official** | ) |
| **capacity, LOUISE PARTIKA,** | ) |
| **individually and in her official** | ) |
| **capacity, and RENEA MORGAN,** | ) |
| **individually and in her official** | ) |
| **capacity,** | ) |
| | ) |
|     **Defendants.** | ) |

### AFFIDAVIT OF GARY NELSON

**STATE OF ALABAMA**
**TALLAPOOSA COUNTY**

Before me, the undersigned authority, personally appeared, **GARY NELSON,** who being by me first duly sworn, doth depose and state as follows:

My name is **GARY NELSON,** and I am an adult resident of Alexander City, Tallapoosa County, Alabama. I have personal knowledge of the facts stated herein:

1.    NELSON'S ELECTRIC MOTOR SERVICES, INC. (hereinafter "Nelson's Electric") is a business corporation organized under the laws of Alabama with its principal place of business located in Alexander City, Alabama and Opelika, Alabama. Nelson's Electric is primarily in the business of repairing and maintaining industrial electric motors. I own all the shares of the corporation and I am the President and Chief Executive Officer of the company. At all times pertinent to the action filed against Nelson's Electric, the company employed twenty-five (25) persons or less. Patricia Wheeles was employed in August of 1999 and I was her supervisor.

2.    At the time of Patricia Wheeles' separation from Nelson's Electric on August 17, 2006, her duties with the company were as follows: Payroll, Accounts Payable and General Ledger.. Renea Morgan was employed by Nelson's Electric on the 5th day of May, 2005.   Ms. Morgan's duties with the company were for Inventory Control.  Ms. Wheeles' job responsibilities did not change throughout her employment. At the time of Ms. Wheeles' termination she was making $11.85 per hour and Ms. Morgan was making $11.50 per hour and even though Ms. Morgan had twenty (20) years of experience in inventory control, she was still making less than Ms. Wheeles.

3.    I employed Louise Partika on the 19th day of October, 1984 and her position was Office Manager throughout her employment.  At the time of Ms. Wheeles' separation, substantially all of Ms. Wheeles' duties and responsibilities were transferred to Louise Partika.  At the time of Ms. Wheeles' separation, Ms. Partika was sixty (60) and older than Ms. Wheeles.  The only job responsibility previously held by Ms. Wheeles that was assigned to Renea Morgan was obtaining payroll information and transferring this information to a third party independent contractor, McBee Payroll which performed all payroll functions for Nelson's Electric.  This task takes approximately 30 minutes to 1 hour per work week.  This task was not a substantial part of Ms. Wheeles' job duties and is not a substantial part of the job duties continued by Ms. Morgan.

4.    Patricia Wheeles was terminated from the company for a legitimate business reason. Russell Corporation, which was Nelson Electric's largest business customer began a large scale downsizing and outsourcing of its production.  The Nelson's Electric operation in Opelika became the company's largest producer of business and revenue.  Ricky Lashley, an employee of Nelson's Electric is the manager of the overall operation of Opelika shop.  I determined that the Opelika operation needed office support and determined to transfer Ms. Wheeles to the Opelika shop which constituted approximately a 40 minute commute from Alexander City.  When I conveyed this

information to Mr. Lashley, Mr. Lashley made it very clear to me that if Ms. Wheeles came to work in the Opelika shop then Mr. Lashley would quit his employment with Nelson's Electric. Mr. Lashley and Ms. Wheeles had worked together for a period of time over the seven (7) she was employed. Mr. Lashley and Ms. Wheeles did not have a good working relationship. Mr. Lashley refused to work with Ms. Wheeles. Mr. Lashley is my "key" man at the Opelika shop which now does substantially more business than the Alexander City office and I could not afford to lose Mr. Lashley as an employee so I determined to not send Ms. Wheeles to Opelika. My objective was to downsize the Alexander City office and send Ms. Wheeles to the Opelika shop which was in need of office personnel. I could not send her to the Opelika shop without losing my key man so I terminated Ms. Wheeles. Ms. Wheeles' duties were the easiest to incorporate into the duties of Louise Partika, the Office Manager who had performed these duties over many years during her employment with Nelson's Electric.

5.      Ms. Wheeles was not treated differently due to her age, religious beliefs or sex. Ms. Wheeles was not terminated due to her age and her job responsibilities were not assigned to Renea Morgan, the younger female but were assigned to Louise Partika, an older female and who is also within the protective age of the ADEA. Ms. Wheeles was terminated because of a legitimate business necessity. At all times, Ms. Wheeles' compensation was higher than that of Renea Morgan and her office was much more desirable than that of Renea Morgan.

6.      Ms. Wheeles complains that during the time we discussed the possibility of her going to work at the Opelika plant, she would not receive a $100 per month gas reimbursement as given to another employee, Brian Voss. Mr. Voss did receive this reimbursement but only because he used his personal vehicle to make deliveries of motors and parts on behalf of Nelson's Electric to customers in the area. This would not have been any part of Ms. Wheeles' responsibilities. Ms.

Wheeles was reimbursed for use of her vehicle in and about Alexander City during her employment.

7.    At the time of her termination, Ms. Wheeles attempted to work out an agreement which would provide a part-time job for her with Nelson's Electric which could work back into full-time employment. I thought it was best for the company to not enter into such an agreement. I was under the impression from Ms. Wheeles that she enjoyed working at Nelson's Electric and in lieu of her termination, would take on part-time work. Ms. Wheeles did not ever complain to or mention to me the presence of a hostile work environment due to either sexual connotations or religious persecution. If Ms. Wheeles had been in such a hostile environment then I do not think that she would have requested a part-time job at her termination.

8.    At her deposition taken on March 31, 2008, Ms. Wheeles said she was terminated to make way for another female employee, Debra Keel. Debra Keel was employed by Nelson's Electric on March 12, 2007, almost seven (7) months after Ms. Wheeles was terminated and worked until July 18, 2007. At the time of her employment, Ms. Keel was fifty-two (52) years old. Ms. Keel never worked in the office area and no one has been employed to replace Ms. Keel. Nelson's Electric now has only two (2) female employees in the Alexander City office performing Nelson's Electric duties.

9.    Renea Morgan and I have never had an improper interpersonal or sexual relationship.

10.    At the time of termination of Ms. Wheeles, I was 46 years old.

_____

**GARY NELSON**


Sworn to and subscribed before me this 2 ND day of _APRIC_____ 2008.

_____
Notary Public
My Commission Expires:_____10/14/10_____

**SEAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| PATRICIA WHEELES,                       ) | |
|                                         ) | |
|     Plaintiff,      ) | |
|                                         ) | |
| v.                                      ) | **CASE NO. 3:07 CV1006-MEF** |
|                                         ) | |
| NELSON'S ELECTRIC MOTOR                 ) | |
| SERVICES, GARY NELSON,                  ) | |
| individually and in his official        ) | |
| capacity, LOUISE PARTIKA,               ) | |
| individually and in her official        ) | |
| capacity, and RENEA MORGAN,             ) | |
| individually and in her official        ) | |
| capacity,                               ) | |
|                                         ) | |
|     Defendants.     ) | |

### AFFIDAVIT OF RENEA MORGAN

**STATE OF ALABAMA**
**TALLAPOOSA COUNTY**

Before me, the undersigned authority, personally appeared, **RENEA MORGAN,** who being by me first duly sworn, doth depose and state as follows:

My name is **RENEA MORGAN,** and I am an adult resident of Alexander City, Tallapoosa County, Alabama. I have personal knowledge of the facts stated herein:

1.     Prior to my employment with NELSON'S ELECTRIC MOTOR SERVICES, INC. (hereinafter "Nelson's Electric"), I was employed with Russell Corporation for twenty (20) years. I worked at the Central Supply office and my job duties were inventory control. As a result of Nelson's Electric's business relationship with Russell Corporation, I knew Gary Nelson (on a business level only). Russell Corporation was undergoing many changes during my last years of employment with Russell Corporation and in fact, was downsizing. As a result of this downsizing, when Mr. Nelson inquired if I had any interest in doing the same job at Nelson's Electric, I

determined to end my employment at Russell Corporation and become employed at Nelson's Electric.

2. At the age of 38, I was employed by Nelson's Electric on the 5th day of May, 2005 for inventory control. My duties were the same as I had at Russell Corporation. I did not take over any job duties of Patricia Wheeles. My office was located next to the men's bathroom in the shop area. I was not in the main office area. At the time of Ms. Wheeles' termination, (August 16, 2006) I was 39 years of age but would turn 40 on September 13, 2006.

3.     At no time have I had an interpersonal or sexual relationship with Mr. Nelson. I respect Mr. Nelson as a business person and consider him a friend but I am happily married and deny that Mr. Nelson has ever approached me in any untoward fashion, sexually or otherwise nor have I approached him.

4.     Upon Ms. Wheeles' termination from the company on the 17th of August, 2006, I continued with my normal responsibilities. Louise Partika took over the job responsibilities of Patricia Wheeles. After six (6) weeks, Louise Partika asked me to prepare the payroll information for McBee Payroll because she had not done well with this duty.   This task takes approximately 30 minutes to an hour each Wednesday and is not a substantial part of my job.

**RENEA MORGAN**

Sworn to and subscribed before me this _1st_ day of _April_ 2008.

Notary Public
My Commission Expires:_____

**SEAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

PATRICIA WHEELES,                        )
                                         )
        Plaintiff,                       )
                                         )
v.                                       )        CASE NO. 3:07 CV1006-MEF
                                         )
NELSON'S ELECTRIC MOTOR                  )
SERVICES, GARY NELSON,                   )
individually and in his official         )
capacity, LOUISE PARTIKA,                )
individually and in her official         )
capacity, and RENEA MORGAN,              )
individually and in her official         )
capacity,                                )
                                         )
        Defendants.                      )

## AFFIDAVIT OF RICKY LASHLEY

STATE OF ALABAMA
TALLAPOOSA COUNTY

Before me, the undersigned authority, personally appeared, **RICKY LASHLEY,** who being by me first duly sworn, doth depose and state as follows:

My name is **RICKY LASHLEY,** and I am an adult resident of Alexander City, Tallapoosa County, Alabama. I have personal knowledge of the facts stated herein:

1.      I am employed with NELSON'S ELECTRIC MOTOR SERVICES, INC. (hereinafter "Nelson's Electric"), as the manager of the Opelika office. I have been employed with Nelson's Electric from 1991 to the present date. My job responsibilities are the total management of the Opelika division of Nelson's Electric and I have held this position since 2003.

2.    I know Patricia Wheeles and have worked with her as a co-employee over a period of seven (7) years of which a part of that time, Ms. Wheeles was working in the Opelika shop with me. Ms. Wheeles and I did not have a good working relationship and in fact, it was a bad working relationship.

3.    When Gary Nelson, President of Nelson's Electric advised me that he was sending Patricia Wheeles to the Opelika office, I objected and in fact, I told Mr. Nelson that if Ms. Wheeles came to the Opelika office then I would be terminating my position with Nelson's Electric and I would find employment elsewhere.

RICKY LASHLEY

Sworn to and subscribed before me this _31st_ day of _MARCH_ 2008.

Notary Public
My Commission Expires: _10/14/10_

**SEAL**

```
 1        about the 31st of August, he hired Debra Keel

 2        from Russell which she was one of his contacts

 3        at Russell also.

 4   Q.   Do you know what Debra Keel is doing?

 5   A.   From my knowledge is they did a rotation thing.

 6        Debra Keel took over Renea's job.  Renea took

 7        over Louise's job, and Louise took mine.

 8   Q.   What is the source of your information?

 9   A.   People that were previously employed there that

10        had left the company also.

11   Q.   Who are they?

12   A.   Mike Taylor for one.

13   Q.   Who else?

14   A.   We'll just stay with him.

15   Q.   No.  If I ask, you've got to answer.

16   A.   I understand that.  The others I'm not -- Mike

17        Taylor was mainly the one that told me about

18        that.

19   Q.   I need to know anybody else that talked to

20        you about what was happening at Nelson

21        Electric after you left?

22            MR. BLYTHE:  Go ahead and answer the

23        question, Patricia.
```

1  A.  I was trying to think of their name is what I
2      was trying to think of.  It was a black guy that
3      came there and took care of Gary's vehicles that
4      I did embroidery for his church, cleaned Gary's
5      vehicles up.
6  Q.  You don't recall his name?
7  A.  I can't think of his name right now.
8  Q.  Look at this list of people that you have
9      typed out as being employed at --
10 A.  Yes, while I was there at different times.
11 Q.  Do you recognize names on that list?
12 A.  Mike Taylor was the only one on this list.
13 Q.  So Mike Taylor would be the person that you
14     mainly gained your information from --
15 A.  Right.
16 Q.  -- what has occurred at Nelson Electric as
17     far as job duties after you left; is that
18     correct?
19 A.  Correct.  He was the one that told me that they
20     had hired Debra Keel.
21     MR. RADNEY:  Let me for the record state
22     that Defendant's Exhibit 1 is four pages and
23     clipped back together.

```
 1        office at Nelson Electric?
 2   A.   The one in Alexander City, there's three.
 3   Q.   Okay.
 4   A.   And I presume there's still just Cara Lee at the
 5        Opelika shop.
 6   Q.   Is there some reason that you feel like that
 7        Mr. Nelson didn't want to send Renea to
 8        Opelika other than what he told you?
 9   A.   He said he wanted her up here at the Alex. City
10        office.
11   Q.   After you left --
12   A.   Let me verify something.  When I say the office,
13        that includes the office and the shop where
14        there's Louise and Renea in the front office and
15        then there's the office in the shop where I was
16        told Debra Keel was working.  That was Renea's
17        office when I left.
18   Q.   That's just geography, is it not?
19   A.   Yes.
20   Q.   They're still doing office work?
21   A.   Office work, correct.
22   Q.   Patricia, I know I'm asking you to base this
23        next question on things that have been told
```

```
 1        to you and things.  But since you left do

 2        you have any idea about your specific job

 3        duties and who's doing those now?

 4   A.   I do not have a clue other what I was told.

 5   Q.   And what were you told?

 6   A.   I was told that Debra Keel was hired.  And she

 7        went in for the office in the shop to replace

 8        Renea.  Renea went into Louise's office to

 9        replace Louise.  Louise went into my old office

10        to do my job and replace me.

11   Q.   This was after you were told that the

12        business would not support this many

13        employees?

14   A.   Correct.

15   Q.   Now, Patricia, do you feel like you were

16        treated differently than Renea?

17   A.   Yes, I do.

18   Q.   Why is that?

19   A.   Well, you know, it was pay raises and just the

20        way he acted in general.

21   Q.   I'm not asking what he did.  I'm asking why

22        do you think he treated her better than

23        you?
```

1        that was my resume' that I had taken.  And there

2        was some church business on there.  I picked the

3        two discs up to put them in my box.  When I did,

4        Gary grabbed me by my right arm and jerked the

5        discs out of my hand.

6    Q.  When you say he grabbed you by your right

7        arm, what do you mean?  Did he place his

8        hand on you?

9    A.  No, he grabbed me.  He held my arm very

10       strongly.

11   Q.  Would you characterize that as an act of

12       aggression?

13   A.  Yes, I do.  I sure do.  The way he jumped up and

14       grabbed me, yes, I do.

15   Q.  Would you characterize that as some people

16       might say man handling you?

17   A.  Yes.

18       MR. BLYTHE:  That's all the questions I

19       have.

20                    EXAMINATION

21   BY MR. RADNEY:

22   Q.  I take it when Gary touched you, it wasn't a

23       in a sexual manner, was it?

1   A.   No, it was aggressive.

2   Q.   This was after he had already let you go?

3   A.   Yes, I was packing my things.

4   Q.   Do you know whether or not Debra Keel is

5       presently employed at Nelson Electric?

6   A.   No, I do not.

7   Q.   Do you know when she was employed?

8   A.   All I know is I was told she came there a couple

9       of weeks after I left.

10  Q.   In your EEOC charge you never mentioned the

11      name of Debra Keel.  Why is that?

12  A.   Well, we did the day we were there because I

13      found out the night before we went.

14  Q.   And in your complaint that you filed against

15      Nelson Electric, you never mentioned the

16      name Debra Keel, did you, when you filed

17      this 15 November, 2007?  Do you see her name

18      in this complaint?

19  A.   No, it's not.

20        MR. RADNEY:  Thank you, ma'am.  That's all I

21      have.

22               END OF PROCEEDINGS

23